UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDULLAHI KHALIF NOOR,

               Petitioner,

    v.

MELISSA ANDREWJESKI,

               Respondent.

CASE NO. 2:22-cv-00270

ORDER

**I**

**INTRODUCTION**

This matter comes before the Court on Petitioner Abullahi Khalif Noor's Objections to Report and Recommendation. Dkt. # 18. Petitioner filed a writ of habeas corpus with this Court on March 7, 2022, under 28 U.S.C. § 2254, raising eight grounds for relief. Dkt. # 1. The Honorable Judge Brian A. Tsuchida, United States Magistrate Judge, issued a Report and Recommendation (Report) on November 15, 2022, recommending that the Court (1) deny the petition without an evidentiary hearing; (2) deny Petitioner's request for a certificate of appealability; and (3) dismiss the claims for relief with prejudice. Dkt. # 17.

Petitioner objects to "all" of the Report's findings and rulings but raises specific objections only to Judge Tsuchida's resolution of grounds one through seven in his brief. Dkt. #

18 at 1.  Petitioner also objects to Judge Tsuchida's recommendation to deny a certificate of appealability and raises a constitutional challenge to the certificate of appealability procedure itself.  *Id.* at 11–12.  Having reviewed the Report and Recommendation, Petitioner's objections thereto, the applicable law, and the remaining record, the Court:

> (1) ADOPTS the conclusions and reasoning of the Report and Recommendation with modifications outlined below;

> (2) DENIES Petitioner's habeas claims with prejudice;

> (3) DENIES an evidentiary hearing as to all of Petitioner's claims;

> (4) DENIES a certificate of appealability as to Petitioner's habeas claims; and

> (5) GRANTS a limited certificate of appealability as to Petitioner's constitutional challenge to the certificate of appealability requirement.

## II

### BACKGROUND

Petitioner is currently serving an indeterminate life sentence at Coyote Ridge Corrections Center for crimes committed against S.K.[1]  Dkt. # 17 at 1.  Petitioner is a Somali refugee who fled to Nairobi as a child and later moved to the United States to work as a taxi driver in Seattle.  Dkt. # 18 at 1.  Per Petitioner's account, S.K. is his wife, she was born in 1990, and her name is actually "Hadiyo Ali" (H.A.).  *Id.*

Per S.K.'s account, as adopted by the Washington Court of Appeals, she was born in 1998 as "S.K."  Dkt. #10-1 at 18.  When S.K. was 11 or 12 years old, she moved in with

---

[1] The Court acknowledges that there is a discrepancy regarding whether the complaining witness's name is actually "S.K." or "H.A."  Since the state court record and Report refer to the complaining witness as "S.K.", this order refers to her as "S.K."  In doing so, it makes no comment as to what is her true name.

Petitioner and his son, M.K.,[2] in Nairobi, but they were never legally married.  *Id.*  In 2011 or 2012, after Petitioner had already immigrated to Seattle, he decided that M.K. and S.K. should move to the United States to live with him.  *Id.*  At this point, Petitioner allegedly told S.K. to use 1990 as her birthyear and adopt "Hadiyo Ali," his mother's name, as her legal name.  *Id.* S.K. also alleged that prior to initiating the immigration process, Petitioner "created documents" to show that they were lawfully married and that her legal name and birth year were H.A. and 1990 respectively.  *Id.*

The record states that after S.K. and M.K. arrived in Seattle in May 2014, Petitioner made various verbal threats towards S.K. and engaged in a series of violent acts towards her person. *Id.*  These events led to a severe domestic violence incident on May 28, 2015, followed by a verbal and physical altercation with S.K., Ifrah Noor[3] (S.K.'s neighbor), and Ifrah's mother the next day.  *Id.* at 18–20.  On May 30, the police arrested Petitioner and Child Protective Services (CPS) took M.K. into custody.  *Id.* at 20.

After the arrest, the City of Seattle charged Petitioner with misdemeanor assault of "Hadiyo Ali" in the fourth degree and the Seattle Municipal Court issued a no-contact order prohibiting Petitioner from contacting S.K. and Ifrah.  *Id.*  The State also charged Petitioner with various domestic violence crimes.  *Id.*  The record states that despite the no-contact order, Petitioner continued to live in the same apartment with S.K. and M.K. after he was released from jail.  *Id.*  It also indicates that after the State filed charges, Petitioner threatened to harm M.K. and S.K. on multiple occasions.  *Id.*

---

[2] The record refers to Petitioner's son as "M.N." as well as "M.K."  Since Petitioner's objections refer to the child as "M.K.," this order refers to him as "M.K."  In doing so, it makes no comment as to what is his true name.

[3] Ifrah Noor is unrelated to Petitioner so, to avoid confusion, the state court records and the Report refer to her simply as "Ifrah."  This order adopts this naming convention and refers to her as "Ifrah."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The State then filed an amended information, changing "Hadiyo Ali" to "S.K. (DOB 9/23/98) aka H.F.A." in the charging documents.  *Id.* at 20–21.  The State charged Petitioner with rape of S.K. in the second degree, rape of S.K. as a child in the third degree,[4] felony harassment of S.K., witness intimidation of S.K., assault of S.K. in the fourth degree, three counts of misdemeanor violation of the court order protecting S.K., and felony harassment and felony stalking of Ifrah.  *Id.*

Petitioner faced trial in King County Superior Court in June 2016.  *Id.* at 21.  After a five-day trial, the jury found Petitioner guilty of rape of S.K. in the second degree, assault of S.K. in the fourth degree, witness intimidation of S.K., three counts of misdemeanor violation of the court order issued to protect S.K, and misdemeanor harassment of S.K. and Ifrah.  *Id.* at 21–22. The jury reached a not guilty verdict for the other two charges (third degree rape of a child and felony stalking of Ifrah).  *Id.*  On August 12, 2016, the trial court imposed an indeterminate life sentence on the rape charge, with a minimum term of 172 months.  Dkt. #10-2 at 422.

Following his conviction, Petitioner appealed.  Dkt. # 17 at 4.  In June 2018, the Washington Court of Appeals affirmed his judgment and sentence.  *Id.*  Petitioner then sought review by the Washington Supreme Court.  *Id.*  The Washington Supreme Court denied review on November 28, 2018, and the Court of Appeals issued a mandate on December 28, 2018.  *Id.* Represented by counsel, Petitioner filed a personal restraint petition (PRP) with the Washington Court of Appeals on December 18, 2019.  *Id.*  The court denied the PRP.  *Id.*  Petitioner then sought review by the Washington Supreme Court.  *Id.*  The Deputy Commissioner of the Washington Supreme Court denied review.  *Id.* at 5.  Petitioner then moved to modify the

---

[4] This charge was based on the State's allegation that S.K. was born in 1998, as S.K. would have been an adult during the relevant time period if she was born in 1990.  None of the other charges referenced S.K.'s age.

1    Commissioner's ruling denying review. *Id.* The Washington Supreme Court denied the motion

2    to modify on January 5, 2022, and the Court of Appeals issued the mandate on January 24, 2022.

3    *Id.*

4         Having exhausted all available state court remedies, Petitioner petitioned for a writ of

5    habeas corpus under 28 U.S.C. § 2254 with this Court on March 7, 2022. Dkt. # 1. The State

6    filed a response on May 24, 2022. Dkt. # 9. On November 15, 2022, Judge Tsuchida issued a

7    Report recommending dismissal of the writ. Dkt. # 17. Petitioner submitted his objections to the

8    Report on December 5, 2022. Dkt. # 18. After the Court granted Respondent's unopposed

9    motion for an extension of time, Respondent filed a response to Petitioner's objections on

10   January 3, 2023. Dkt. ## 19, 20, 21.

## III

### STANDARD OF REVIEW

13        When reviewing objections to a magistrate judge's Report and Recommendation, "[t]he

14   district judge must determine de novo any part of the magistrate judge's disposition that has been

15   properly objected to." Fed. R. Civ. Proc. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(c) ("A judge

16   of the court shall make a de novo determination of those portions of the report or specified

17   proposed findings or recommendations to which objection is made."). While district courts are

18   not obligated to provide individualized analysis of each objection, summarily adopting a

19   magistrate judge's Report, without addressing Defendants' objections, is disfavored. *See United*

20   *States v. Ramos*, 65 F.4th 427, 443 (9th Cir. 2023) (Collins, J., concurring in part, dissenting in

21   part); *see also United States v. Jones*, 837 F. App'x 423, 424 (9th Cir. 2021).

22

23

24

ORDER - 5

1    The Anti-Terrorism and Effective Death Penalty Act (AEDPA) governs a federal court's

2  review of a § 2254 petition for a writ of habeas.  *See Williams v. Taylor*, 529 U.S. 362, 399

3  (2000).  Under the AEDPA,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was *adjudicated on the merits* in State court proceedings unless the adjudication of
> the claim—
>> (1) resulted in a decision that was *contrary to*, or involved *an unreasonable
>> application of, clearly established Federal law*, as determined by the Supreme
>> Court of the United States; or
>> (2) resulted in a decision that was based on *an unreasonable determination of
>> the facts* in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

Under § 2254(d)(1), a decision is "contrary to" federal law if the state court arrives at a

conclusion opposite to that reached by the Supreme Court on a question of law, or if the state

court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams*, 529 U.S. at 405–06.  A decision is an "unreasonable

application" of federal law if the state court identifies the correct governing legal principle from

the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

petitioner's case.  *Id.* at 407–08.  The term "clearly established Federal law" refers to the

governing legal principles set forth by the Supreme Court at the time of the decision.  *Lockyer v.

Andrade*, 538 U.S. 63, 64 (2003).  Notably, "[i]f no Supreme Court precedent creates clearly

established federal law relating to the legal issue the habeas petitioner raised in state court, the

state court's decision cannot be contrary to or an unreasonable application of clearly established

federal law."  *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d

480, 485–86 (9th Cir. 2000)).  Under § 2254(d)(2), a decision is an "unreasonable determination

of the facts" if the evidence before the state court was "too powerful to conclude anything but"

the opposite result of that reached by the state court.  *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005).

 The AEDPA imposes a highly deferential standard of review, with the petitioner bearing the burden of proof.  *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011); *see also Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In considering claims under § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen*, 563 U.S. at 182; *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013).

# IV

## DISCUSSION

 Petitioner objects to (1) Judge Tsuchida's application of AEDPA deference to his claims; (2) Judge Tsuchida's resolution of grounds one through seven of his habeas petition; (3) Judge Tsuchida's recommendation to deny a certificate of appealability for his habeas claims; and (4) the constitutionality of the certificate of appealability procedure.  For the reasons discussed below, the Court adopts sections B.1, B.2, and B.7 of the Report with modifications, adopts sections B.3, B.4, B.5, B.6, and B.8 of the Report without modifications, and denies a certificate of appealability and evidentiary hearing for all of Petitioner's habeas claims.[5]  Because Petitioner's constitutional challenge to the certificate of appealability procedure raises an

---

[5] Petitioner does not raise any specific objections to Judge Tsuchida's analysis of his ineffective assistance of appellate counsel claim (B.7(d)), cumulative error claim (B.8), or the evidentiary hearing issue ("Evidentiary Hearing").  *See generally* Dkt. # 17.  Consequently, the Court adopts Judge Tsuchida's recommendations on these issues and does not address them herein.

important and relatively novel constitutional question, the Court grants a narrow certificate of appealability on the issue.

A.      AEDPA Deference

Petitioner objects to Judge Tsuchida's application of AEDPA deference to his claims. *See generally* Dkt. # 18.  Specifically, Petitioner contends that the Court should not apply AEDPA deference to his first three claims because the state courts did not adjudicate them "on the merits."  *Id.* at 3, 5, 8; *see* 28 U.S.C. 2254(d).  Petitioner argues that no AEDPA deference is owed because: (1) the state courts' citation to a single state case, *State v. Mansour*, 14 Wash. App. 2d 323, 470 P.3d 543 (2020), "does not evidence an adjudication" of his first claim on the merits; (2) in resolving his second claim, the state courts relied on *State v. Mullen*, 171 Wash. 2d 881, 259 P.3d 158 (2011), which "conflicts with federal law"; and (3)  the "Washington Supreme Court Commissioner failed to analyze [his third] federal claim, rejecting it with conclusory language."  *Id.*

The AEDPA applies only if the claim at issue was adjudicated by the state courts on the merits.  *See* 28 U.S.C. 2254(d).  "[A]n adjudication on the merits is 'a decision finally resolving the parties' claims . . . that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'"  *Kirkpatrick v. Chappell*, 950 F.3d 1118, 1131 (9th Cir. 2020) (citing *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004)).  When a petitioner's federal claim was presented to, and then rejected by, the state courts, the habeas court will presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Harrington*, 562 U.S. at 99.  "This presumption applies even when the state court resolves the federal claim in a different manner or context than advanced by the petitioner so long as the state court 'heard and evaluated the evidence and the

parties' substantive arguments.'" *Patsalis v. Shinn*, 47 F.4th 1092, 1098 (9th Cir. 2022) (quoting *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (internal quotation marks and citation omitted).

Judge Tsuchida correctly applied AEDPA deference to all of Petitioner's claims. As to Petitioner's first objection, state courts are neither required to cite federal law nor issue an opinion explaining their reasoning for the decision to constitute an "adjudication on the merits." *See Harrington*, 562 U.S. at 98. Thus, Petitioner's observation that the state courts cited only *Mansour* is irrelevant to the Report's conclusion that the claim was adjudicated on the merits. Petitioner's other argument, that his first claim was not adjudicated on the merits because *Mansour* does "not purport to address the issues in this case," also fails, as Petitioner's disagreement with how the state courts interpreted *Mansour* and resolved his claim does not rebut the presumption of an adjudication on the merits. *See Patsalis*, 47 F.4th at 1098. This is especially so when the state courts' cited case, *Mansour*, addresses issues similar to those raised by Petitioner.[6]

Petitioner's AEDPA arguments for grounds two and three similarly fail. Though Petitioner may believe that the state courts' review of his claims was cursory or otherwise incorrect, that by itself cannot rebut the presumption that his claims were adjudicated on the merits. *See Patsalis*, 47 F.4th at 1098. Since the state courts heard and evaluated Petitioner's substantive arguments for claims two and three and later denied relief on non-procedural grounds, AEDPA deference is the appropriate standard of review. *See Kirkpatrick*, 950 F.3d at 1131. As Petitioner presents no other explanation for why these claims, or any of his other

---

[6] In *Mansour*, the Court rejected the defendant's claims that the use of the victim's initials in the to-convict instructions (1) constituted an impermissible judicial comment on the evidence, (2) relieved the State of its burden of proof, and (3) together with the use of the victim's initials in other court documents, amounted to a court closure in violation of defendant's right to a public trial. *Mansour*, 14 Wash. App. 2d at 328–34.

claims, were not resolved on the merits, the Court overrules Petitioner's objection to Judge Tsuchida's application of AEDPA deference to his claims.

B.      Ground One: Pseudonym Issue

Petitioner asserts that the trial court's use of the complaining witness's chosen initials and date of birth (S.K. and 1998), instead of her full legal name and date of birth (Hadiyo Ali and 1990), violated a series of constitutional rights.[7]  Dkt. # 5 at 7.  In his objections, Petitioner takes issue with Judge Tsuchida's conclusion that the trial court's use of S.K. and 1998 in its oral and written instructions was not improper.  Dkt. # 18 at 2–4.  Petitioner contends that, contrary to Judge Tsuchida's statement, the trial court did not use "S.K. merely as an identifier," *see* Dkt. # 17 at 18, since the trial court never stated that "the alleged victim was an 'individual *the state identifies* as S.K.'"  Dkt. # 18 at 3 (citing Dkt. #17 at 18).  Petitioner says that without such qualifying language, an ordinary juror listening to and reading the judge's instructions would conclude that the judge believed "S.K." and "1998" to be the complaining witness's true name and birthdate.  *Id.* at 4.  According to Petitioner, this constituted "judicial imprimatur of the correctness of the State's theory," thereby lowering the State's burden of proof and prejudicing Petitioner.  *Id.*

Petitioner also objects to Judge Tsuchida's conclusion that the use of S.K.'s initials in the court pleadings, instead of her full name, did not violate his right to an open and public trial guaranteed by the First, Sixth, and Fourteenth Amendments.  *Id.* at 5.  Petitioner specifically objects to Judge Tsuchida's statement that "the United States Supreme Court has not held a defendant's right to a public trial is violated by less than a total closure of the courtroom."  *Id.*

---

[7] Petitioner also contends that AEDPA deference is not appropriate because the state court cited only one case (*Mansour*).  Dkt. # 18 at 3.  For the reasons stated in Part A, the Court overrules this objection.

(citing Dkt. # 17 at 20).  In support of his argument, Petitioner cites two cases, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975) and *United States v. Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014), in which the Supreme Court and Ninth Circuit found First Amendment violations when the trial court attempted to restrict public access to court documents.

The Court rejects Petitioner's objections to this claim.  When a federal habeas petitioner challenges the validity of a state jury instruction, the question before the court is whether, given the entire trial record and the jury instructions as a whole, "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Id*. at 71. When a petitioner claims that the instruction lowered the State's burden of proof, the question before the court is whether the "jury instruction relieve[d] the prosecution of its burden in proving every element of the offense beyond a reasonable doubt." *Roettgen v. Ryan*, 639 F. Supp. 2d 1053, 1066 (C.D. Cal. June 30, 2009) (citing *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)).

Petitioner has not met his burden of establishing that the trial court's use of "S.K." and "1998" lowered the State's burden of proof or interfered with his right to a public jury trial. Because S.K.'s name and birthdate were not elements of any of the crimes that the State had to prove, the trial court's instructions could not relieve the prosecution of its burden of proof.[8] *See*

---

[8] In support of his objection, Petitioner cites various cases in which courts found a due process violation based on improper jury instructions.  But none of these lend direct support to his claim, as they all involve situations in which the trial judge instructed the jury that an essential element of the crime had been proven.  *See Carella v. California*, 491 U.S. 263 (1989) (trial judge imposed conclusive presumptions as to core elements of defendant's crime); *United States v. Mentz*, 840 F.2d 315 (6th Cir. 1988) (trial judge instructed the jury that an element of the crime had been proven); *United States v. Martin Linen Supply Co*.,430 U.S. 564 (1977) (deadlocked jury was discharged and trial judge granted a motion for a judgment of acquittal); *United Bhd. of Carpenters & Joiners of Am. v. United States*, 330

*Mansour*, 14 Wash. App at 329–31 (concluding that the trial court did not lower the State's burden of proof by using the victim's initials because the victim's name was not a factual issue requiring resolution). And notably, the jury found Petitioner not guilty on the child rape charge. The trial court had to refer to the complaining witness in some manner. Although it could have used qualifying language every time it referred to "S.K." and "1998," the judge did repeatedly state, including before reading the specific jury instructions, that "a charge is only an accusation" and that the jury must find beyond a reasonable doubt what the State has alleged in order to convict. *See* Dkt. # 10-2 at 142, 147. Thus, the state courts reasonably concluded that the absence of qualifying language did not so infect the entire trial as to violate due process. Further, even if the instructions were in fact improper, ambiguous, or otherwise deficient as Petitioner alleges, that is not the relevant standard of review. So long as the state courts reasonably concluded that the jury instructions did not "so infect the entire trial" such that the conviction violates due process, Petitioner is not entitled to habeas relief. *See Cupp*, 414 U.S. at 147 (for a federal court to overturn a conviction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.").

Petitioner's court closure claim also fails. The Supreme Court has held that a defendant's constitutional right to a public trial may be implicated by a court closure. *See Waller v. Georgia*, 467 U.S. 39, 44 (1984). But the Ninth Circuit has clarified that *Waller* applies only to "total closures—i.e., when all persons other than witnesses, court personnel, the parties and their lawyers [a]re excluded for the duration of the hearing." *See United States v. Rivera*, 682 F.3d 1223, 1236 (9th Cir. 2012) (quoting *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir. 1992)). If the

U.S. 395 (1947) (trial judge's instructions contained incorrect statements of law); *United States v. Johnson*, 718 F.2d 1317 (5th Cir. 1983) (trial judge summarized documents for the jury).

court closure is brief, trivial, or otherwise does not "implicate the values that the right to a public trial serves," according to the Ninth Circuit, there is no Sixth Amendment violation. *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003) (citing *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996) and *Waller*, 467 U.S. at 46–47).

Petitioner has not established that the use of S.K.'s initials in the record amounted to a court closure in violation of his Sixth Amendment rights. Since the courtroom remained open throughout trial, S.K.'s full name was used in open court, and the trial record remains unsealed, the use of S.K.'s initials could be viewed as trivial. *See Ivester*, 316 F.3d at 960; *see also Mansour*, 14 Wash. App. at 326 (use of victim's initials in the record was not "closure"). But even assuming a partial closure did occur, Petitioner's claim still fails. The Ninth Circuit permits partial closures so long as the party seeking the closure advances a "substantial reason" for why the closure is necessary. *See United States v. Sherlock*, 962 F.2d 1349, 1357 (9th Cir. 1989). The Ninth Circuit has recognized various interests that will satisfy this standard, including an interest in protecting a witness's dignity in a rape trial. *See Rivera*, 682 F.3d at 1236; *see also Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (pseudonyms are permitted "when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature"). As the trial court presumably used a pseudonym to protect S.K.'s dignity and privacy, it was reasonable for the state courts to conclude that Petitioner's public trial rights were not violated. Petitioner's objection to the Report does not disrupt this conclusion, as his cited cases are materially distinct and do not purport to address the issues in his claim.[9]

---

[9] *Cox* addresses whether a news outlet could be found civilly liable for publishing the name of a rape victim, whose full name had been obtained via publicly available court records. *Cox*, 420 U.S. at 471. The court concluded that it would violate the First Amendment's guarantee of freedom of the press to find the news outlet liable for publishing publicly available information. *Id.* In *Index*, the court ruled

1

C.      Ground Two: *Brady* Violation

2

Petitioner asserts that the State's failure to disclose exculpatory evidence in its possession

3

(a CPS interview with M.K. in which he stated that he had not witnessed violence in the home

4

and that S.K. was actually Hadiyo Ali with a 1990 birthdate), violated its disclosure obligations

5

under *Brady v. Maryland*, 373 U.S. 83 (1963).  Dkt. # 5 at 12.  Petitioner objects to the Report's

6

conclusion that the state courts reasonably found no suppression and prejudice.  Dkt. # 18 at 5.

7

With respect to suppression, Petitioner claims that the state courts improperly imposed a due

8

diligence requirement on his counsel, in violation of Ninth Circuit case law.[10]  *Id*. at 6.  In the

9

alternative, Petitioner argues that this Court should still find suppression under the state courts'

10

due diligence standard, as neither he nor his lawyers were aware of the "essential facts" that

11

would enable them to take advantage of the CPS interview.  *Id.*  As for prejudice, Petitioner lists

12

various reasons why it was unreasonable for the state courts and Judge Tsuchida to conclude that

13

the State's failure to disclose the CPS interview was not prejudicial.[11]  *Id.* at 7.  He also argues

14

that the Report applied the wrong legal standard, as the proper standard is whether the new

15

evidence is sufficient to "undermine confidence in the verdict," not whether it was "necessarily

16

inconsistent."  *Id.* (citing *Wearry v. Cain*, 577 U.S. 385, 392 (2016) and Dkt. # 17 at 31 n.11).

17

against the government, finding that the trial court violated the public right of access when it sealed a contempt order (i.e., an entire portion of the record) without a compelling reason.  *Index*, 766 F.3d at 109.

18

[10] Petitioner also contends that AEDPA deference is not appropriate because the state court based its decision on *Mullen*, 171 Wash. 2d at 896, which "conflicts with federal law."  But since there is

19

conflicting precedent in the Ninth Circuit as to how to understand *Brady*'s diligence requirement, as well as a circuit split on suppression under *Brady* more generally, this Court cannot say that the state courts'

20

reliance on *Mullen* was "contrary to or an unreasonable application of clearly established federal law."  *See Brewer*, 378 F.3d at 955 (a state court decision cannot be contrary to or an unreasonable application

21

of clearly established federal law if there is no clearly established federal law on the issue).  For this and the reasons stated in Part A, the Court overrules this objection.

22

[11] Petitioner states that he was prejudiced because: (1) the fact that "M.K. never said he was present when Ms. Ali claimed she was raped or assaulted is evidence that there were no rapes or assault";

23

(2) "M.K.'s youth would make him more credible in the eyes of the jury"; and (3) not all of S.K.'s statements were corroborated by additional evidence, including her rape claims, name, and birthdate.

24

Dkt. # 18 at 7.

In *Brady*, the Supreme Court held that a criminal defendant's right to a fair trial is violated when the prosecution fails to disclose material evidence to the defense. *Brady*, 373 U.S. at 86. To establish a *Brady* violation, "a criminal defendant must establish that (1) the withheld evidence was *favorable* to the defendant; (2) the government *suppressed* the evidence; and (3) the government's suppression *prejudiced* the defendant." *Cunningham v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013) (emphasis added). Evidence is considered "favorable" if it is either exculpatory or impeaching. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The suppression prong, however, is less straightforward, as the key Ninth Circuit cases on this issue appear to contradict. *Compare Cunningham*, 704 F.3d at 1154 (there is no suppression so long as "the defendant [was] aware of the essential facts enabling him to take advantage of any exculpatory evidence") *with Amado v. Gonzalez*, 758 F.3d 1119,1136–37 (9th Cir. 2014) ("[t]he prosecutor's [disclosure] obligation under Brady is not excused by a defense counsel's failure to exercise diligence with respect to suppressed evidence").[12] Under the third prong, evidence is prejudicial "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A reviewing court will assess prejudice "in the context of the entire record" and in light of the overall strength of the State's case. *United States v. Agurs*, 427 U.S. 97, 112–13 (1976).

Petitioner has not established that the state courts' resolution of his *Brady* claim was unreasonable. Regardless of how this Court evaluates his suppression argument, Petitioner's *Brady* claim fails because he has not demonstrated that the state courts' prejudice analysis was

---

[12] There is also a circuit split on how to evaluate suppression. The Second, Fifth, and Eleventh Circuits appear to apply the stricter, "essential facts" standard from *Cunningham*, *see*, *e.g.*, *United States v. Brown*, 582 F.2d 197, 200 (2d Cir.), *cert. denied*, 439 U.S. 915 (1978); *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994); *United States v. Griggs*, 713 F.2d 672, 674 (11th Cir. 1983), while the Third and Tenth Circuits appear to apply the looser, "no due diligence" standard from *Amado*. *See*, *e.g.*, *Dennis v. Sec'y*, 834 F.3d 263 (3d Cir. 2016) (en banc); *Fontenot v. Crow*, 4 F.4th 982 (10th Cir. 2021).

unreasonable.  As noted in the Report, nothing M.K. said to CPS directly contradicted the evidence at trial: no one claimed that M.K. was present for the alleged events, M.K.'s statements about not witnessing violence in the home were general and in response to general questions, and the government's failure to disclose M.K.'s comments about S.K.'s true name and birthdate could not be prejudicial, as these facts were irrelevant to Petitioner's convictions.  *See* Dkt. # 17 at 29; *see also supra,* Part B.  M.K. was six years old at the time of the CPS interview and the interview reflects that.  *See generally* Dkt. # 10-2 at 393–402.  Although the interview did contain Petitioner's cited quotes, it also included several statements that would weaken the overall exculpatory effect of the interview.[13]  *Id.*  In sum, Petitioner has not established prejudice and his *Brady* claim fails.

Petitioner's argument that Judge Tsuchida applied the wrong standard is also mistaken.  Petitioner's cited case, *Wearry*, is not a habeas case and thus does not dictate the proper standard of review.[14]  The question before the Court is not whether the withheld information undermines confidence in the verdict, but rather, whether it was reasonable for the state courts to conclude that it did not.  *See supra,* Section III.  In comparing the withheld evidence to the entire record and the overall strength of the State's case, the state courts' determination that the CPS interview would not have "put the whole case in such a different light as to undermine confidence in the verdict" was not unreasonable.  Thus, Petitioner is not entitled to relief on this claim.

---

[13] For example, when asked "how long has [S.K.] lived with you?" M.K. responded one and a half weeks.  Dkt. # 10-2 at 397.  M.K. also initially said that H.A. was his mom, that his birth mom had taken him to South Africa, and that "S.K." was the name of his daycare.  *Id.* at 393–402.

[14] Additionally, although Judge Tsuchida did not cite *Wearry* in the Report, he stated that the CPS interview would not have "significantly undermined the testimony and corroborating evidence" in reaching his conclusion.  Dkt. # 17 at 31.

D.      Ground Three: Jury Coercion

Petitioner contends that the trial court's statements to the jury regarding the "dangers of doing their own independent research" were unduly coercive, in violation of the Sixth and Fourteenth Amendments. Dkt. # 18 at 8. Petitioner objects to the Report's conclusion that the state courts reasonably rejected this claim, stating that the Washington Supreme Court Commissioner and the Report applied the wrong standard by "suggesting that Mr. Noor needed to provide evidence of actual juror coercion." Dkt. # 18 at 8.[15]

"In a federal habeas proceeding, a claim of jury coercion requires the habeas court to ask: (1) whether the state court looked at the totality of the circumstances in determining if the instruction was coercive; and (2) whether that court's determination on the coercion question was reasonable." *Parker v. Small*, 665 F.3d 1143, 1148 (9th Cir. 2011). A jury instruction is "unconstitutionally coercive if it denies a defendant the due process right to a trial by a fair and impartial jury." *DeWeaver v. Runnels*, 556 F.3d 995, 1007 (9th Cir. 2009). Federal habeas review is particularly deferential on this matter. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Even if we agreed . . . that there was jury coercion here, it is at least reasonable to conclude that there was not, which means that the state court's determination to that effect must stand."). Unless the trial judge explicitly encouraged the jury to reach a particular verdict, the reviewing court will typically conclude that there was no jury coercion. *See e.g.*, *Lowenfield v. Phelps*, 484 U.S. 231, 242 (1988) (holding that the "combination of the polling of the jury and the supplemental instruction was not 'coercive'"); *Cunningham v. Uttecht*, No. C12–2278–JCC, 2013 WL 6388589, at *2 (W.D. Wash. Dec. 6, 2013) (rejecting petitioner's claim that the trial

---

[15] Petitioner also contends that the Court should not apply AEDPA deference to this claim because the state courts did not analyze it on the merits. Dkt. # 18 at 8. For the reasons stated in Part A, the Court overrules this objection.

judge "coerced the jury by giving a supplemental charge directing the jury to continue deliberations and by remarking that having to excuse a juror later in the day would pose a 'dilemma' for the court."); *Schubert v. Quinn*, No. C08–0660RSL, 2014 WL 794301, at *8 (W.D. Wash. Feb. 26, 2014) (rejecting petitioner's claim that the trial judge made improper and coercive statements by saying "[W]e have come way too far for there to be a mistrial" in the context of telling jurors not to discuss the case).

Petitioner has not demonstrated that the state courts' resolution of his jury coercion claim was unreasonable.  The practice of judges instructing jurors not to discuss the case or access outside information is widespread.  *See United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir. 1999); *see also Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 1.8 (2022).  The comments that Petitioner cites all involve the trial judge warning the jury that they should not access outside information, rather than explicitly or implicitly indicating that the jurors should reach a particular verdict.  *See* Dkt. # 5 at 16-17.  Though Petitioner is correct that jury deliberations are secret, and that a party is not required or permitted to obtain testimony from jurors, *see* Fed. R. Evid. 606(b), neither the Washington Supreme Court Commissioner nor Judge Tsuchida suggested that Petitioner must seek out jurors to demonstrate coercion.  *See generally* Dkt. ## 10, 17.  Instead, their statements suggest that Petitioner did not meet his burden of proof for establishing a claim of jury coercion because he failed to explain why his rights were violated by a judge telling jurors not to access outside information.  *See e.g.*, Dkt. # 10-2 at 669 ("Mr. Noor does not show that by these admonitions the court 'threatened' the jurors or likely 'coerced' them into reaching a verdict in order to avoid a hung jury, as he claims."); Dkt. # 17 at 35 ("Petitioner's arguments that these generalized comments and examples may have somehow coerced the jury . . . are entirely speculative").  Lastly, even assuming the judge's

comments were unwise, the deferential standard of review weighs against petitioner.  *See Early*, 537 U.S. at 8.  Petitioner is therefore not entitled to relief on this claim.

E.      Grounds Four and Five: Double Jeopardy Claims

Petitioner contends that his separate convictions and sentences for count six (harassment) and count seven (intimidating a witness), as well as for counts two, three, and eight (court order violations), violate the prohibition against double jeopardy protected by the Fifth and Fourteenth Amendments.  Dkt. # 18 at 8.  In his objections, Petitioner asserts that the state courts' resolution of his fourth claim was unreasonable because the courts "erroneously held that the two crimes (harassment and intimidating a witness) required proof of different elements and that the State had argued that different threats underlay each count."  Dkt. # 18 at 9.  Petitioner also argues that the resolution of his fifth claim was unreasonable because the use of "on or about" in the "to convict" instructions allowed the jury to base its convictions for counts two, three, and eight on the same conduct.  *Id.*  He states that because Washington law allows "on or about" to convict people for sex offenses at any time within the statute of limitations period, the Court must defer to Washington's construction of its own statutes and reject the state courts' decision on his double jeopardy claim.[16]  *Id.*[17]

The Double Jeopardy Clause guarantees no person shall "be subject of the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend V.  However, a defendant may still be charged, convicted, and sentenced for multiple crimes, without violating double jeopardy,

---

[16] It is unclear exactly what Petitioner is arguing here.  Washington does allow the "on or about" language to convict people for sex offenses at any point within the limitations period.  But the fact that "on or about" expands the charging period seems unrelated to his double jeopardy argument, as defendants in Washington can still be convicted of multiple counts of the same offense so long as the convictions are based on distinct conduct.  *See State v. Brown*, 159 Wash. App. 1, 10–11, 248 P.3d 518 (2010) (defendant convicted of multiple no-contact order violations).

[17] As additional evidence that there is no assurance that the three convictions were based on separate acts, Petitioner notes that during deliberations, the jury raised a question about what "on or about" means.  Dkt. # 18 at 9.

so long as there is specific evidence underpinning each conviction or the offenses themselves are distinct. *See Garrett v. United States*, 471 U.S. 773, 779 (1985); *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932). To determine whether the charged offenses are "distinct," the court "inquires whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993). "[D]ouble jeopardy exists if the second offense contains elements identical to, or included as a subset within, the elements of the former charge." *United States v. Wright*, 79 F.3d 112, 114 (9th Cir. 1996).

The state courts reasonably determined that Petitioner's separate convictions for counts six and seven did not violate double jeopardy. Under the Washington State Criminal Code, witness intimidation and misdemeanor harassment are separate crimes with unique elements. *See* RCW 9A.72.110; RCW 9A.46.020. Unlike Petitioner's cited case, *Anderson v. Neven*, 797 Fed. App'x. 293 (9th Cir. 2019), neither witness intimidation nor misdemeanor harassment serve as a predicate for the other crime under state law.[18] Thus, Petitioner's convictions for counts six and seven satisfy the standard for distinct offenses under *Blockburger*. It was also reasonable for the state courts to conclude that it was apparent to the jury that separate threats underlay the two convictions. The record demonstrates that S.K. testified about two separate threats (one related to retrieving M.K. from CPS custody and one related to lifting the no-contact order against Petitioner), which were discussed as separate threats during the prosecutor's closing arguments. Dkt. # 17 at 37. Although Petitioner is correct that the prosecutor did not explicitly clarify during closing arguments which threats were made, at what exact time, and in which context, he cites no precedent indicating that a prosecutor must use that level of specificity to avoid double

---

[18] In *Anderson*, the defendant was convicted of two offenses: failure to yield and felony driving under the influence causing death. *Anderson*, 797 Fed. App'x. At 295. Since "failure to yield" was used to satisfy one of the elements of the other charged crime, the *Anderson* court determined that there was a double jeopardy violation. *Id.*

1    jeopardy concerns. *See generally* Dkt. # 18. Further, the jury was specifically instructed that a

2    "separate crime is charged in each count" and that they "must decide each count separately." *See*

3    Dkt. # 10-2 at 150.

4           The state courts also reasonably rejected Petitioner's double jeopardy claim for counts

5    two, three, and eight. The charging documents alleged three separate NCO violations on three

6    separate dates, and the record contained evidence in support of three specific and distinct no-

7    contact order violations. *See generally id.* The record also indicates that the prosecution argued

8    the counts as separate offenses and presented evidence at trial, including witness testimony and

9    video surveillance, to support three separate no-contact order violations. *Id.* It was therefore not

10   unreasonable for the state courts to conclude that there was no double jeopardy violation.

11          Lastly, Petitioner fails to demonstrate how the use of "on or about" in the jury

12   instructions creates a double jeopardy violation. As discussed above, an incomplete, improper,

13   or ambiguous jury instruction does not provide a basis for relief unless it "so infected the entire

14   trial that the resulting conviction violated due process." *Estelle*, 502 U.S. at 71–72; *see also*

15   *Cupp*, 414 U.S. at 147. It is not obvious that the use of "on or about" in the "to convict"

16   instructions reaches this threshold, especially when other cases have rejected the level of

17   specificity that Petitioner is requesting. *See e.g.*, *State v. Hayes*, 81 Wash. App. 425, 914 P.2d

18   788, 793 (1996) (petitioner's conviction affirmed even though "on or about" was used in the jury

19   instructions); *Thompson v. Haynes*, No. C21-5342-BJR-SKV, 2021 WL 6693201, at *6 (W.D.

20   Wash. Nov. 10, 2021) (lack of specific instruction informing the jury that each count had to be

21   based on a separate and distinct act did not violate double jeopardy). Similarly, there is no

22   evidence that the jurors' question about what "on or about" means related to this specific jury

23   question, as multiple instructions contained the same language. Dkt. # 17 at 37. Thus, Petitioner

24   has failed to establish a double jeopardy violation.

1

F.      Ground Six: Sufficiency of the Evidence on Count Eight

2

Petitioner contends that his due process rights were violated because insufficient

3

evidence supported his conviction for count eight (violation of a court order).[19]  Dkt. # 18 at 9.

4

Petitioner states that "no rational trier of fact would conclude that on July 31, 2015, Mr. Noor

5

instructed anyone to have contact with Ms. Ali or to pass on any type of message" and that the

6

Report "should not be followed as it fails to appreciate the absence of evidence that Mr. Noor

7

asked Mr. Moussa to say anything to Ms. Ali on his behalf."  *Id.* at 10.

8

To establish a habeas claim for sufficiency of the evidence, a petitioner must first

9

demonstrate "whether, after viewing the evidence in the light most favorable to the prosecution,

10

any rational trier of fact could have found the essential elements of the crime beyond a

11

reasonable doubt."  *Jackson*, 443 U.S. at 319.  Under *Jackson*, reviewing courts grant the jury

12

broad discretion to decide "what inferences to draw from the evidence presented at trial,

13

requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'"

14

*Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319); *see also*

15

*Wright v. West*, 505 U.S. 277, 296 (1992) (juries may believe the State's evidence and disbelieve

16

the defense's evidence).  Then, the petitioner must establish that the state courts' application of

17

*Jackson* was unreasonable.  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

18

On habeas review, federal courts are also bound by "a state court's interpretation of state

19

law."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  In Washington, "circumstantial evidence is

20

[19] Petitioner's conviction for count eight was based on an incident allegedly occurring on July 31,
2015, involving a no contact order violation by a third party, Mr. Moussa.  Dkt. # 17 at 44.  The State

21

alleged: on July 31, S.K. received a call from a phone number she did not recognize, a man's voice told
her that if she did not give up Petitioner's son in 30 minutes, "then … what happen[s] to you, it's up to

22

you," and then a man whom S.K. did not recognize arrived at her door.  *Id.*  S.K. subsequently called the
police.  *Id.*  The responding officer testified that: upon arrival he interviewed the man, who identified

23

himself as Moussa, Mr. Moussa told him that he was acquainted with Mr. Noor from the mosque and had
been given D.S.H.S. paperwork that authorized him to remove M.K. from the apartment, and that the

24

paperwork Mr. Moussa presented did not address the no-contact order.  *Id.*

not to be considered any less reliable than direct evidence" when determining a sufficiency of the evidence claim on appeal. *State v. Delmarter*, 94 Wash. 2d 634, 638, 618 P.2d 99 (1980). Furthermore, "the specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability." *Id.* Reviewing courts in Washington also defer to the trier of fact on issues of witness credibility. *See State v. Witherspoon*, 180 Wash. 2d 875, 883, 329 P.3d 888 (2014).

In viewing the evidence in the light most favorable to the prosecution, the state courts reasonably concluded that there was sufficient evidence for a rational trier of fact to find Petitioner guilty on count eight beyond a reasonable doubt under Washington law. The State's witnesses' testimony, the lack of an incidental contact provision in the no-contact order, and the fact that Mr. Moussa was unknown to S.K., yet knew Petitioner and somehow acquired S.K.'s phone number, address, and suspicious D.S.H.S. paperwork, all could allow a rational trier of fact to conclude that Petitioner violated the no-contact order. *See* Dkt. ##17 at 49; 10-2 at 266. Aside from stating that "no rational trier of fact" would reach this conclusion, Petitioner fails to explain why a rational trier of fact could not reach this outcome based on the applicable law. Thus, Petitioner is not entitled to habeas relief on this claim.

G.     Ground Seven: Ineffective Assistance of Counsel Claims

Petitioner alleges that he received ineffective assistance of counsel at trial and on direct appeal in violation of his rights to counsel and due process of law protected by *Strickland v. Washington*, 466 U.S. 668 (1984) and the Sixth and Fourteenth Amendments. Dkt. # 18 at 10. In his brief, Petitioner contends that Judge Tsuchida incorrectly resolved his claim because: (1) defense counsel's decision not to interview M.K. could not have been "tactical" because it was made without knowledge of M.K.'s statements to CPS; (2) Petitioner did not need to establish a tie between his suffering as a child and his behavior to prove that his counsel was ineffective for

failing to present mitigating evidence at his sentencing hearing; and (3) defense counsel did inform him of his plea options but failed to do so in a way that he could understand given his limited experiences with the American justice system.  Dkt. # 18 at 10 (citing *Lafler v. Cooper*, 566 U.S. 156 (2012)).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate (1) that his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) that the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted.  *Strickland*, 466 U.S. at 687.  Under the first prong, an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.  *Id.* at 690.  Under the second prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A petitioner bears a heavy burden when raising a *Strickland* challenge, as the Court applies a strong presumption that counsel's conduct was adequate.  *Id.* at 689.  In evaluating an ineffective assistance of counsel claim on habeas review, "[t]he pivotal question is whether the state courts' application of the *Strickland* standard was unreasonable."  *Harrington*, 562 U.S. at 101.  Judicial review of an attorney's performance is, therefore, "doubly deferential when conducted through the lens of federal habeas."  *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

The state courts reasonably resolved Petitioner's first ineffective assistance of counsel claim, that counsel was ineffective for failing to investigate and discover M.K.'s CPS interview.  Under *Strickland*, defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," which includes a duty to investigate the defendant's "most important defense."  *Strickland*, 466 U.S. at 691; *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994).  But defense counsel's "duty to investigate and

prepare a defense is not limitless." *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995). In reviewing a claim, the court will assume effective assistance so long as counsel's decision not to interview a witness could be considered "sound trial strategy." *Strickland*, 466 U.S. at 689.

The Court cannot conclusively say that defense counsel's performance was deficient. Defense counsel has wide latitude to make tactical decisions about which lines of defense to investigate and rely on at trial. *Id.* at 681, 689. Here, there are a number of strategic reasons why Petitioner's counsel may have chosen not to investigate M.K. For example, counsel may have thought that M.K., who was six years old at the time, would not be an effective trial witness. Counsel may have also been concerned that interviewing M.K. would yield detrimental statements or otherwise alert the government of the existence of the witness, thereby damaging the defense's broader trial strategy of showing that the prosecution failed to meet their burden of proof. The reasonableness of this tactical decision would likely still hold even if counsel knew about M.K.'s specific statements to CPS, as highlighting the fact that the State did not call Petitioner's child to testify is arguably a stronger defense to the charged crimes than M.K.'s very general statements to CPS. Thus, the Court is inclined to find that the state courts reasonably resolved Petitioner's deficient performance claim.

But even assuming deficient performance, Petitioner's claim still fails because he has not demonstrated prejudice. As discussed above in Part C, Petitioner was not prejudiced by not having access to M.K.'s CPS interview. Additionally, since no one alleged that M.K. was present during the charged crimes, counsel did not fail to investigate Petitioner's "most important defense." This also makes the case very different from Petitioner's cited case, *Weeden v.*

*Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017).[20]  Thus, this Court defers to the state courts' determination that there was not a reasonable probability that the results would have been different had defense counsel interviewed Petitioner's son, called him as a witness, or subpoenaed his CPS records.

Petitioner's claim that counsel was ineffective for failing to submit specific mitigating evidence at sentencing also fails.  Although Petitioner is correct that he need not establish a causal tie between the mitigating evidence and his crimes to establish an ineffective assistance of counsel claim, *see Spreitz v. Ryan*, 916 F.3d 1262, 1265 (9th Cir. 2019), this observation does not disrupt the Report's ultimate conclusion.  In considering what took place at the sentencing hearing, the state courts reasonably resolved this claim.  *See generally* Dkt. # 10-3 at 790–823. Counsel provided mitigating evidence about Petitioner's love for his son, lack of criminal history, and respect in the community.  *Id.*  Petitioner also had the chance to address the court but chose not to discuss his childhood experiences in Somalia, instead opting to berate the court.  *Id.* Analyzing counsel's decision to not bring up Petitioner's childhood trauma, "from counsel's perspective at the time of the alleged error and in light of all the circumstances," the Court cannot say that counsel's performance was deficient.  *See Strickland*, 466 U.S. at 694.  Thus, the state courts' determination that Petitioner failed to establish deficient performance was reasonable.

Lastly, Petitioner has not demonstrated that his counsel was ineffective for failing to adequately explain his plea options.  To prove that a plea offer was rejected "because of counsel's deficient performance, defendants must demonstrate a reasonable probability they

---

[20] In *Weeden*, the court found ineffective assistance of counsel because defense counsel failed to investigate evidence that would directly disprove an element of the charged crime.  *Weeden*, 854 F.3d at 1070.  Here, the undiscovered evidence does not directly implicate any of the elements of Petitioner's charged crimes.

would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012).  The record demonstrates that defense counsel informed Petitioner of the plea offers and of the potential consequences of going to trial but Petitioner rejected them, stating that he "wasn't willing to consider several years in prison." Dkt. # 17 at 52.  Petitioner's brief also fails to explain how the offers were improperly communicated to him or how they could have been communicated differently to account for his limited experience with the American justice system.[21]   As Petitioner has not demonstrated that counsel's performance was deficient or that there is a "reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel," the state courts' resolution of this claim was reasonable.

H.     Certificate of Appealability

Petitioner objects to the denial of a certificate of appealability as to all of his habeas claims, stating that "jurists of reason could disagree with the district court's resolution of his constitutional claims."  Dkt. # 18 at 11 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Specifically, Petitioner argues that a certificate of appealability is warranted because "Judge Tsuchida himself noted a split in the circuits regarding whether there can be a *Brady* violation" and stated that "fair-minded jurists could disagree."  *Id.* (citing Dkt. # 17 at 27 n.9).  Petitioner thus argues that at a minimum, a certificate of appealability is warranted for his *Brady* claim.

Petitioner also challenges the constitutionality of the certificate of appealability process itself.[22]  He claims that the certificate of appealability procedure is unconstitutional because it

---

[21] Petitioner's cited case, *Lafler*, is distinguishable because it involved a situation where defense counsel informed his client of the plea offer and then advised him to proceed to trial instead of accepting the offer.  *Lafler*, 566 U.S. at 161.

[22] To the extent there is any issue concerning the fact that Petitioner did not raise this issue before Judge Tsuchida, the Court exercises its discretion to consider the issue.  *See Wilson v. Poor*, No. C19-

imposes a more onerous standard for appeal on incarcerated prisoners than the government in violation of the Fifth Amendment's guarantee of due process and equal protection.  Dkt. # 18 at 11.; *see also* 28 U.S.C. § 2253(c)(3) (criminal defendants are required to acquire a certificate of appealability); Fed. R. App. Proc. 22(b)(3) (United States and its representatives are exempted from acquiring a certificate of appealability).  Petitioner states that the certificate of appealability requirement for prisoners is rooted in racism and "such a statutory scheme cannot survive even minimal rational-basis scrutiny." Dkt. # 18 at 12.  He thus requests that the Court strike it down on due process and equal protection grounds. *Id.*

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

The Court denies Petitioner's request for a certificate of appealability as to his habeas claims.  Petitioner has not demonstrated that any jurist of reason would disagree with this Court's resolution of his petition or conclude that his habeas claims deserve encouragement to proceed further.  In requesting a certificate of appealability for his *Brady* violation, Petitioner also mistakes the standard.  Judge Tsuchida's comment about fair-minded jurists related to the state courts' interpretation of how much diligence is required under *Brady*.  While fair minded jurists could disagree on the proper interpretation of *Brady*, fair-minded jurists would not disagree with this Court's conclusion that the state courts reasonably resolved Petitioner's *Brady* claim.  Thus, Petitioner is not entitled to a certificate of appealability for any of his habeas claims.

---

5920 BHS-TLF, 2023 WL 22057, at *3 (W.D. Wash. Jan 3, 2023).  Respondent does not specifically object on this ground.  *See generally* Dkt. # 21.

The Court also declines Petitioner's request to strike down the certificate of appealability requirement.  As neither the Supreme Court nor the Ninth Circuit has directly addressed this claim, the Court has no authoritative precedent on the issue.  As far as federal appellate courts, only the Fifth Circuit has addressed this question, concluding that the lopsided requirement does not violate the Fifth Amendment because states have a legitimate interest in preserving resources to defend against appeals and the certificate of appealability procedure is rationally related to that interest.  *See Garcia v. Dretke*, 388 F.3d 496, 499-450 (5th Cir. 2004).  Other Supreme Court cases also appear to support the proposition that preventing frivolous appeals is a legitimate government interest.  *See e.g.*, *Barefoot v. Estelle*, 463 U.S. 880, 892 & n.3 (1983) (the State has an interest in preventing abuses of the writ habeas corpus); *In re Sindram*, 498 U.S. 177, 179–180 (1991) ("The goal of fairly dispensing justice, however, is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests.").

The Court, however, believes a limited certificate of appealability is warranted on this issue given the novelty of Petitioner's claim and the important constitutional question at stake.  *See Hiivala v. Wood*, 195 F.3d 1098, 1103 (9th Cir. 1999) (per curiam) ("certificates of appealability are to be granted on an issue-by-issue basis"); *see also* 28 U.S.C. § 2253(c)(3).  Petitioner's evidence suggests that the certificate of appealability requirement may be rooted in racism, *see United States ex rel. Tillery v. Cavell*, 294 F.2d 12, 15 (3rd Cir. 1961) (discussing the origin of 28 U.S.C. § 2253), and racism is not a legitimate government interest under rational basis review.  *See Loving v. Virginia*, 388 U.S. 1, 11 (1967).  Further, the Supreme Court and Ninth Circuit have both indicated that the right to appeal is a fundamental right, the restriction of which may violate a prisoner's right to due process and equal protection under the Fifth Amendment.  *See*, *e.g.*, *Griffin v. Illinois*, 351 U.S. 12 (1956) (right to appeal cannot be conditioned on an irrational characteristic, such as the defendant's wealth); *Rodriguez v. Cook*,

169 F.3d 1176, 1179 (9th Cir. 1999) ("prisoners have a constitutional right of meaningful access to the courts").  Since reasonable "jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further," *see Miller-El*, 537 U.S. at 327, the Court grants a limited certificate of appealability as to Petitioner's constitutional challenge to the certificate of appealability procedure.

**V**

**CONCLUSION**

For these reasons, the Court ADOPTS the conclusions of the Report, as well as its reasoning to the extent that it does not conflict with this order.  The Court also DENIES an evidentiary hearing and certificate of appealability as to Petitioner's habeas claims but GRANTS a certificate of appealability on the issue of the constitutionality of the certificate of appealability procedure.

Dated this 21st day of July, 2023.

John H. Chun
United States District Judge